[No. 16847. Department Two. May 5, 1922.]

THE CITY OF CAMAS, *Respondent*, v. J. P. KIGGINS *et al.*, *Appellants.*[1]

APPEAL (473)—DECISION—FORMER DECISION AS LAW OF CASE. Decisions of the supreme court, on review of rulings relating to a change of venue, in a prosecution for violating a city ordinance, that the police court had exclusive jurisdiction, become the law of the case on that point, upon an appeal from a conviction.

JUSTICE OF PEACE (27)—REVIEW—TRIAL DE NOVO. On appeal from a conviction in the police court of violating a city ordinance, a trial *de novo* in the superior court, on an amended complaint, is not an attempt to exercise original jurisdiction, when the amendment did not change the nature of the action or the claimed ground of recovery.

MUNICIPAL CORPORATIONS (339)—VIOLATION OF ORDINANCE—CRIMINAL PROSECUTIONS—SENTENCE OR PUNISHMENT. In a prosecution for violation of a building ordinance, in which the defendants had their day in court in the police and superior court, complaint cannot be made of the amount of the recovery awarded the city because of its erroneous designation as a fine, penalty, damages or a debt.

SAME (337)—VIOLATION OF ORDINANCE—EVIDENCE—SUFFICIENCY. The evidence that a manager of a theatre was actually in charge and caused an addition to be built without fire proof material, sustains his conviction of violation of the fire ordinance; but there was not sufficient proof to sustain a conviction of the president of the theatre company, where it appeared that he lived in another city, and had nothing to do with and knew nothing about the construction of the addition.

Appeal from a judgment of the superior court for Clarke county, Hewen, J., entered February 7, 1921, upon findings in favor of the plaintiff, in a prosecution

[1]Reported in 206 Pac. 951.

for the violation of an ordinance, tried to the court. Affirmed in part and reversed in part.

*Miller, Wilkinson & Miller* and *Arthur I. Moulton,* for appellants.

*John D. Currie,* for respondent.

PARKER, C. J.—This is a prosecution by the plaintiff, a city of the third class, against the defendants, Kiggins and McGill, for an alleged violation by them of an ordinance of the city prescribing the fire limits therein and the kind of buildings that may be constructed within those limits. The ordinance (No. 95), after defining the fire limits, in so far as we need here notice its language, reads as follows:

"Section No. 5. All buildings which shall be erected within that part of the said fire-limits lying between Beeson and Columbia streets shall be built of fire proof material on the outside, and no new building shall be erected and no repairs made on any building within said fire limits without permission first being obtained from the building committee. . .

"Section 6. Any violation of any of the provisions of this ordinance shall be punished by a fine in any sum less than $100, and every owner or occupant of any building referred to in this ordinance who shall persist in such violation after being notified thereof by said building committee shall be deemed guilty of an additional offense on every day the same shall be persisted in . . ."

The original complaint against the defendants, filed in the police court, after alleging the existence of the ordinance; the provisions thereof above quoted; the granting of a permit to build an addition to the Grand Theatre by the defendants within the fire limits in accordance with the ordinance; the violation of the ordinance and permit by the defendants in their failure to build the outside walls "of fire proof material;" and

their persistent neglect and refusal in leaving the addition in such condition, concludes:

"That the terms of said permit constituted a contract with the city of Camas, on the part of the defendants J. P. Kiggins, J. K. McGill and Joseph Wilson.

"That the city of Camas the above named plaintiff has been damaged by said breach of contract in the sum of $300.

"Wherefore plaintiff demands judgment against the defendants for the sum of $300 and the costs and disbursements of this action."

The case proceeded to trial in the police court, the entry of the police judge's docket showing the defendants being present and being "duly arraigned upon the charge stated in said complaint, pleaded not guilty;" such answering plea evidently being made orally. The claim of recovery in the sum of $300 evidently was rested upon the theory that the defendants were guilty of several violations of the ordinance occurring upon successive days under § 6 of the ordinance (No. 95) above quoted. The trial in the police court resulted in a judgment, evidently rested upon the same theory, as follows:

"Wherefore, it is now on this 19 day of June, 1919, considered and adjudged that said defendants pay damages to the amount of $297 and costs of this action."

We here note that it is conceded that no process was ever issued looking to the restraining of the defendants of their liberty in connection with this prosecution, nor have they been at any time required to enter into recognizance for their personal appearance. The defendants appealed to the superior court for Clarke county, which brought the case into that court for trial *de novo* as upon appeals from a justice of the peace court to a superior court, whatever may be the nature of the ac-

tion. Laws of 1919, ch. 113, p. 275; Rem. Comp. Stat., §§ 9119, 9143. There seem to have been two amended complaints filed in the case in the superior court, as we think was allowable, though we have only the first one in the record before us. However, it is apparent from such of the record as is before us, and what is said here by counsel for appellants in their brief, that the amended complaint upon which the case was tried upon appeal in the superior court did not materially change the nature of the alleged cause of prosecution from that alleged in the original complaint in the police court, though the prayer was for recovery of $297 only, being the amount of the judgment rendered in the police court. This amended complaint was demurred to in the superior court, which demurrer was overruled. There was also a motion in the superior court by counsel for appellants for judgment of dismissal in their behalf upon the pleadings, which motion was also by the superior court overruled. Thereupon the defendants filed their answer, generally denying all the allegations of the "second amended complaint," other than plaintiff's corporate existence as a city of the third class. Thereupon the cause proceeded to trial upon the merits in the superior court without a jury, trial by jury evidently being waived; at least no demand therefor appears and no objections to the trial so proceeding appear. The trial resulted in findings and judgment by the superior court, the whole of the latter, omitting formal parts, reading as follows:

"It is ordered, adjudged and decreed that the plaintiff have judgment against the defendants and each of them in the sum of Ninety-nine Dollars ($99), and for its costs and disbursements in this action to be taxed."

From this disposition of the case in the superior court, the defendants Kiggins and McGill have appealed to this court.

This case has, for one of its nature, had quite a history. It has twice before been in this court. It came here upon appeal from the superior court for Clarke county, presenting the question of the claimed right of appellants Kiggins and McGill to a change of venue from the police court to a justice of the peace court of Clarke county. In disposing of that appeal we affirmed the judgment of the superior court (*State ex rel. Kiggins v. Woolson*, 98 Wash. 505, 167 Pac. 1088), holding that there was no such right in appellants because the police court of the city had exclusive jurisdiction of the case—the prosecution being for the violation of an ordinance of the city—resting our decision upon the provisions of Rem. Code, § 7671-29[1]. The case again came here upon appeal from the superior court for Clarke county, presenting the question of the claimed right of appellants Kiggins and McGill to have the case dismissed in the police court because of undue delay in bringing it to trial in that court, they claiming that court had lost jurisdiction. We affirmed the judgment of the superior court denying an order preventing the police court from further proceeding with the case (*State ex rel. Kiggins v. Hadley*, 104 Wash. 648, 177 Pac. 655). All of this occurred before the case came to trial in the police court. Those decisions became the law of the case in so far as the original jurisdiction of the police court and the exclusive nature of that jurisdiction are concerned, so we do not notice what seems to be some further contention upon that question made by counsel upon this appeal.

It is somewhat difficult for us to follow in an orderly manner the several contentions of counsel for appellants here. We first note, however, that they seem to argue that this court in its decision in the last appeal

[1]NOTE:   Amended; see Rem. Comp. Stat., § 9143. Rep.

held that, as brought and prosecuted in the police court, the case was purely criminal in its nature; and that afterwards in the superior court the nature of the case was so changed by the amended complaint filed therein as to make it purely civil in its nature; resulting in its becoming a case which in effect the superior court attempted to assume original jurisdiction over, which that court did not possess; and hence that its judgment rendered therein was erroneous and should now be reversed for want of jurisdiction. We think our decision in the last appeal went no farther than to hold that the case was, as commenced and prosecuted in the police court, only quasi criminal; in other words, we think the case was there held to be neither purely criminal nor purely civil, and that therefore the law under which it was claimed the police court had lost jurisdiction because of its having continued it more than sixty days (Rem. Code, § 1847; P. C. § 9427) had no application.

Now the most that we can make out of the contentions of counsel for appellants, other than their contention that the evidence does not sustain the judgment, is in substance this: that the judgment of the superior court must be reversed because the nature of the case was so completely changed by the amended complaint filed in the superior court that the case tried in the superior court was not the case tried in the police court, and that therefore the superior court's judgment was erroneous because, as we have above noticed, it was in effect attempting the exercising of original and not appellate jurisdiction. We cannot give our assent to this view. We think our statement, above made, of the substance of the proceedings and pleadings in the police court and of the amended complaint in the superior court, upon which the case was there tried, show that there was not a change of the nature of the action

or of the claimed ground of recovery in the superior court from that which was put forth in the police court. This being true, as we think it is, it seems quite plain to us that the trial of the case in the superior court *de novo,* as it must have been so tried upon the appeal that was taken thereto, was an exercise of the appellate jurisdiction of the superior court as the law contemplated, and was not the exercise of original jurisdiction by the superior court. We are quite convinced that the judgment of the superior court was not erroneous because of the filing of the amended complaint and the trial of the cause in that court upon that complaint.

Argument is made by counsel for appellants and considerable authority cited, touching the question of the nature of prosecutions seeking recovery of fines, penalties, damages or debts, as causes of action claimed by a city for a violation of its ordinance. It seems to us wholly unnecessary here for us to enter upon an inquiry as to the exact nature of an action or prosecution on the part of the city seeking such a recovery. It is enough for present purposes for us to know that the complaint filed against the defendants in this action in the police court, and also the amended complaint filed against them in the superior court, stated facts which if true show that they had violated the building and fire ordinance of the city, and that the city claimed a money judgment against them because of such violation. It seems to us that whether or not the recovery so sought, and the judgment thereon, be called a fine, a penalty, damages or a debt; or whether or not the action seeking its recovery be called quasi criminal or quasi civil, is of no moment as affecting the validity and binding force of the judgment of the superior court rendered in this case. Defendants had their day in court and a trial upon the merits in the police court.

They also had their day in court and a trial upon the merits in the superior court.  We think they cannot now successfully assail the judgment, rendered after the according to them of such a hearing upon the merits, because the recovery sought by and awarded to the city may have been technically erroneously called a fine, a penalty, damages or a debt.  Many decisions of the courts of this country and of England can be found sanctioning the designation of the recovery sought by any one of these names.  28 Cyc. 780-785; McQuillin, Municipal Corporations, vol. III, §§ 1033, 1034.

The controlling consideration in such cases is, has the defendant been awarded a proper trial upon a complaint properly charging facts which if true show he has violated a given municipal ordinance? and is the judgment rendered against him upon such a trial supported by the proper degree of proof?  If the prosecution is so far criminal in its form and ultimate purpose as to subject him to imprisonment in satisfaction of the judgment which may be rendered against. him, we would be inclined to hold that his violation of the ordinance should be proven beyond a reasonable doubt.  Otherwise we would be inclined to hold that such a conclusive degree of proof would not be required to support the judgment.  Observations made in *Spokane v. Smith,* 37 Wash. 583, 79 Pac. 1125, seem to be in harmony with this view.

It is contended that the evidence does not support the judgment.  We cannot so hold as to the defendant McGill.  The evidence is overwhelming that he was actually in charge of the operation of the theater; that in that capacity he caused the addition to the theater building to be constructed and put into use without being "built of fireproof material on the outside;" and that it was within the fire limits where it was in

violation of the ordinance to be so constructed. Even assuming, without deciding, that it was necessary to prove McGill's violation of the ordinance beyond a reasonable doubt because of the quasi criminal nature of the case, we are still well satisfied that his violation of the ordinance was sufficiently proven to support the judgment as against him. There is some uncertainty in the evidence as to just who he was acting for in the operation of the theater and in the construction of the addition to the theater building, but we think that does not argue, as counsel for appellants seem to contend, that he was not personally responsible for the construction of the addition to the building in violation of the ordinance.

As to the sufficiency of the evidence to support the judgment as against the defendant Kiggins, we feel constrained to take a different view. Counsel for the city seem to have proceeded upon the theory that Kiggins was in partnership with McGill in the operation of the theater and affirmatively acquiesced in the construction of the building in violation of the ordinance. The evidence affirmatively tending to so show we think is of a very meager character. It consists of little else than a statement of a witness that Kiggins authorized the purchase of goods by McGill to be used in connection with the operation of the theater, and the conclusion of one or two witnesses that they were jointly managing the theater. As opposed to this showing, concededly Kiggins did not live at the city of Camas, but at the city of Vancouver, several miles distant. He testified positively that he had nothing to do with the management of the theater; that he had never authorized the purchase of any goods in connection with the management of the theater or the building; that he was never in partnership with McGill in the management of the theater or otherwise; that the theater building

was owned by a corporation of which he, Kiggins, was the president, of which corporation McGill was the sole manager in so far as the management of the theater and the theater building is concerned; and that he, Kiggins, had nothing to do with the construction of the addition to the building. We think the evidence does not support the judgment as against the defendant Kiggins. In arriving at this conclusion we are not assuming that the violation of the ordinance by him must be proved beyond a reasonable doubt in order to support the judgment.

The judgment of the superior court is affirmed in so far as it awards recovery against the defendant McGill, and is reversed in so far as it awards recovery against the defendant Kiggins.

MACKINTOSH, FULLERTON, HOLCOMB, and HOVEY, JJ., concur.